**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MARY L. TOBIN-ROSMAN )<br>(aka Mary L. Tobin) )<br> )<br>*Plaintiff,* )<br> )<br> )<br>vs. )<br> )<br>WELLS FARGO BANK, U.S. BANK NAT'L )<br>ASS'N, AS TRUSTEE FOR RESIDENTIAL )<br>ASSET SECURITY CORPORATION, HOME )<br>EQUITY MORTGAGE-ASSET BACKED )<br>PASS-THROUGH CERTIFICATES, SERIES )<br>2006-EMX3 )<br> )<br>*Defendants.* )<br> ) | C.A. NO.  1:19-CV-11704<br><br>AMENDED COMPLAINT<br><br>JURY TRIAL DEMANDED |

## INTRODUCTION

1.     The Plaintiff, Mary Tobin-Rosman (aka Mary L. Tobin), brings this action as described in the paragraphs set forth herein. This Complaint alleges that Defendants, Wells Fargo Bank ("Wells Fargo")and U.S. Bank National Association, as Trustee for Residential Asset Security Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-EMX3 ("U.S. Bank as Trustee"), breached of the terms of her mortgage noted herein, given by Plaintiff as secured by her real property located at 609 Salem Street, Rockland, MA.   The Defendants breached the mortgage contract in violation of Mass Gen Laws Ch. 244 § 14 as well as violated Mass. Gen. Laws Ch. 244 §35A by sending a purported default notice in accordance with the mortgage contract and right to cure notice pursuant to Mass. Gen. Laws Ch. 244 §35A that contained a materially misleading statement and omission.  Defendants' breach resulted in a void default notice pursuant to the terms to the mortgage, a void right to cure notice in accordance

with Mass. Gen. Laws Ch. 244 §35A, a void foreclosure notice, a void foreclosure auction pursuant to said mortgage, a void foreclosure sale and void foreclosure deed.

2.       Plaintiff further brings this action as described in the paragraphs set forth herein alleging that Defendants breached of the terms of a Trial Period Modification Plan ("TPP") noted herein, and is attempting to wrongfully foreclose the subject mortgage and sell the subject property at mortgagee's foreclosure sale.  Plaintiff seeks specific performance of the alleged TPP or in the alternative damages resulting from the Defendants' breach of the TPP described herein.

3.       The Plaintiff prays that this Honorable Court find that the Defendants breached the terms of the mortgage and further find said default notice is invalid and void.   Further Plaintiff prays that this Honorable Court find that the Defendants violated Mass. Gen. Laws Ch. 244 §35A and further find that the right to cure notice sent pursuant to said statute is null and void as well.  In addition, Plaintiff asks that this Court find that any foreclosure sale conducted by the Defendants and foreclosure deed granted subsequent to the invalid default notice be declared null and void regardless of whether or not said invalid foreclosure deed was recorded.   Plaintiff asks that this Honorable Court declare that any such default notice sent to the Plaintiff as described in this complaint be null and void, declare that any right to cure notice pursuant to Mass. Gen. Laws Ch. 244 §35A as described in this complaint be null and void, declare that any notice of mortgagee's foreclosure sale made to the Plaintiff subsequent to such void default notice and void right to cure notice be null and void, enjoin the Defendants from conducting any foreclosure auction or conveyance of the subject property and declare any foreclosure deed for said Plaintiff null and void.  Plaintiff also seeks declaratory relief, injunctive relief, actual, monetary, punitive and exemplary damages, restitution, an accounting, attorney's fees and costs, and all other relief provided by law for Defendants' wrongful acts.

**JURISDICTION AND VENUE**

4.      This Honorable Court has subject matter jurisdiction as the subject property at issue is located in the Commonwealth of Massachusetts, and Plaintiff resides at said subject property.

5.      Venue is proper in this Honorable Court in that the events or omissions giving rise to this claim have occurred, and the real property that is subject of the action is situated within the Commonwealth of Massachusetts.

**PARTIES**

6.      Plaintiff Mary Tobin-Rosman, is a citizens of Massachusetts and the owner of the subject property respectively located at 609 Salem Street, Rockland MA 02370

7.      Defendant, Wells Fargo Bank, NA, is a residential mortgage servicing company, located at 101 North Phillips Avenue, Sioux Falls, SD 57104..

8.      Defendant, U.S. Bank National Association as Trustee, For Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates Series 2006-EMX3 is a securitized trust claiming to hold the Plaintiff's Mortgage.  The trustee U.S. Bank is located at 425 Walnut Street, Cincinnati, OH 45202.

**ALLEGATIONS OF THE PLAINTIFF ROSMAN**

9.      Plaintiff, Mary Tobin Rosman, resides at and claims to be the owner of real property located 609 Salem Street, Rockland, MA 02370, which is the subject property as referenced herein.

10.     On January 5, 1993, the subject property was granted to the Plaintiff Mary L. Tobin-Rosman and her father William E. Tobin for consideration of $116,000.00.  The Deed evidencing transfer of ownership of the subject property was recorded in the Plymouth Registry of Deeds in Book 11561 at Page 124 on January 5, 1993.

11. On December 19, 2003, the subject property was granted from William E. Tobin and Mary L. Tobin to Plaintiff Mary L. Tobin as sole owner. The Deed evidencing transfer of the ownership of the subject property was recorded in the Plymouth Registry of Deeds in Book 23851 at Page 346 on January 3, 2003.

12. On February 16, 2006, Plaintiff Rosman was granted a Mortgage loan, secured by the subject property, in the amount of $467,500.00, which was recorded in the Plymouth Registry of Deeds in Book 32240 at Page 34 on February 21, 2006. (the Rosman Mortgage) The Mortgage identified Mortgage Lenders Network as the Lender and Mortgage Electronic Registration Systems ("MERS") as mortgagee. The sole Mortgagor and sole grantor of the Note secured by the Mortgage was the Plaintiff Mary L. Tobin-Rosman. William E. Tobin was not listed on either of these documents in any capacity.

13. The Rosman Mortgage states at paragraph 22 as follows;

"22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument…The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke THE STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale,

including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it."

14. Paragraph 22 of the Rosman Mortgage required that prior to acceleration and foreclosure the Defendants were required to send Plaintiff Rosman a Default Notice which informed Plaintiff Rosman that she had a "right to reinstate after acceleration". The "right to reinstate after acceleration" contained in the Rosman Mortgage is described in Paragraph 19 of the Mortgage as follows:

"19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time *prior to the earliest of: (a) five days before* the sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of judgment enforcing this Security Instrument. Those *conditions* are that Borrower: (a) *pays Lender all sums which then would be due* under this Security Instrument and the Note *as if no acceleration had occurred*; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. *Upon reinstatement* by Borrower, this Security Instrument and *obligations* secured hereby *shall remain fully effective as if no acceleration had occurred*. However this right to reinstate shall not apply in the case of acceleration under Section 18."

(emphasis added)

15. On June 24, 2009, MERS assigned the Rosman Mortgage to Defendant, U.S. Bank as Trustee. Said assignment was recorded in the Plymouth Registry of Deeds in Book 37397 at Page 203 on June 24, 2009.

16. On January 31, 2012, MERS again assigned the Rosman Mortgage to Defendant U.S. Bank as Trustee. Said assignment was recorded in the Plymouth Registry of Deeds in Book 40916 at Page 320 on January 31, 2012.

17. On January 24, 2018, U.S. Bank as Trustee again assigned the Rosman Mortgage to Defendant U.S. Bank as Trustee. Said assignment was recorded in the Plymouth Registry of Deeds in Book 49434 at Page 259 on January 24, 2018.

18. Subsequent to the granting of the Rosman Mortgage, Defendant U.S. Bank as Trustee became the holder of the Note that was secured by the Rosman Mortgage and Defendant Wells Fargo ("ASC") became the servicer of said mortgage.

19. In September of 2010 Plaintiff was approved and offer by the Defendants a permanent modification of the Note and Mortgage that reduced the Plaintiff's interest rate from 9% to 5% and lowered her principal and interest payments from $3506.25 to $3108.92.

20. Plaintiff accepted the Defendants modification offer.

21. Between September through November of 2010 the Defendants wrongfully and erroneously demanded that the Plaintiff's father William E. Tobin execute the permanent modification documents because Defendants falsely contended that William E. Tobin was a "vested owner" in the property when William E. Tobin had not been a vested owner in the property since 2003.

22. Plaintiff was and remains ready willing and able to perform under the permanent modification offered and accepted in September of 2010.

23. In November 2010 Defendants breached the permanent modification contract by denying Plaintiff the permanent modification based on the erroneous requirement that William E. Tobin execute the permanent modification documents.

24.　　On or about January 2015, after Plaintiff had applied to Defendants for mortgage assistance, Defendants offered a Trial Period Plan or TPP under the HAMP program. Pursuant to the TPP, three trial payments were to be tendered by the Plaintiff over the course of three months from March to May 2019 in the amount of $3761.16

25.　　Upon payment of the three TPP Payments, Defendants were required to send to Plaintiff a final modification agreement for Plaintiff's signature before the first of the next month. (ie. June 1, 2015).

26.　　Plaintiff alleges that they tendered to Defendants all payments pursuant to the TPP and that Defendants accepted all payments due.

27.　　Defendants breached the TPP contract they agreed to with Plaintiff by failing to send to Plaintiff a final modification agreement for execution pursuant to the terms of the TPP.

28.　　Defendants contend that they failed to send to Plaintiff a final modification prior to the first of the next month following the final TPP payment based on the false assertion that there were title issues that needed to be resolved as William E. Tobin was never a vested owner or signatory at any time during the life of the Mortgage and Note. Furthermore the mortgage clearly identified "Mary L. Tobin-Rosman" as the mortgagor. Therefore Defendants breached the TPP contract by failing to send a final modification to the Plaintiff for execution prior to the 1st of the next month following the TPP.

29.　　Defendant, Wells Fargo, allegedly sent to Plaintiff Rosman a form default/ right to cure letter which stated "after (the right to cure date/ acceleration date), "you can still avoid foreclosure by paying the total past due amount before a foreclosure sale takes place . . . to avoid foreclosure". This statement presents an affirmative misstatement in the default/ right to cure letter because Paragraph 19 of the mortgage only allows reinstatement of the mortgage after acceleration "*prior*

*to the earliest of*: (a) *five days before* the sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Defendant's right to reinstate; or (c) entry of judgment enforcing this Security Instrument".

30. Since there is no Applicable Law specifying the termination of the right to reinstate and there is no entry of judgment enforcing the mortgage, the Plaintiff Rosman's right to reinstate and avoid foreclosure expired five days before the foreclosure sale in accordance with Paragraph 19 of the mortgage. Therefore, the default/ right to cure letter's assertion that the Plaintiff Rosman could pay the "total past due amount before a foreclosure sale take place…to avoid foreclosure" is in direct contradiction with paragraph 19 of the mortgage and is a misleading and incorrect statement.

31. In addition, the failure of the default/ right to cure letter to inform Plaintiff Rosman that the right to reinstate expires 5 days before the foreclosure sale in accordance with paragraph 19 of the Rosman Mortgage, is a violation of Mass. Gen. Laws ch. 244 §35A(c)(2) which required the right to cure letter to inform Plaintiff Rosman of "the date by which the mortgagor shall cure the default to avoid . . . a *foreclosure or other action to seize the home*". (emphasis added).

32. In taking account the record and discovery to date, Plaintiff allege in accordance with Paragraph 22 of their Complaint that the purported Default/ Right to Cure Letters fail to fully and "properly" describe the Plaintiffs' "right to reinstate after acceleration" as required by and detailed in Paragraph 19 of the Mortgage. Therefore, the Defendant's failure to include such information is a breach of contract and a violation of the Statutory Power of Sale pursuant to M.G.L. ch. 244 §21 for failing to provide a "proper" default notice in accordance with Paragraph 22 of the Mortgage and a violation of Mass. Gen. Laws Ch. 244 §35A(c)(2).

33. Plaintiff alleges that the notice sent purporting to state compliance with paragraph 22 of the Rosman Mortgage failed to contain the required information as described in said paragraph, contained a misleading statement that claimed that the Plaintiff could pay the "total past due amount before a foreclosure sale take place…to avoid foreclosure",   and further failed to state with specificity the conditions Plaintiff are required to meet in order to exercise their right to reinstate the mortgage after acceleration pursuant to paragraph 19 of the Rosman Mortgage.

34. Plaintiff further alleges that the default/right to cure letter failed to inform Plaintiff that the right to reinstate after acceleration is to be done "prior to . . . five days before the sale" in violation of M.G.L. ch 244 §35A(c)(2) which requires the Defendants to notify the Plaintiff of "the date by which the mortgagor shall cure the default to avoid . . . *a foreclosure or other action to seize the home*." (emphasis added).

35. M.G.L. ch 244 §35A(d) also provides that "The Mortgagee, or anyone holding thereunder, may also provide for reinstatement of the note after the 90 day notice to cure has ended."

36. Defendants failure to notify the Plaintiffs of the right to reinstate after acceleration prior to five days before the sale is also a violation of the notice provision provided in M.G.L. ch 244 §35A(d).

37. As such, the Defendants failed to provide the Plaintiff proper Notice of Default/ Right to Cure in violation of M.G.L. c. 244 §35A(c)(2), 35A(d) and in breach of the Mortgage contract and are in violation of M. G. L. c. 183, § 21 for failure to first comply with the terms of the mortgage prior to exercising the power of sale, rendering any acceleration, foreclosure, and sale void.

38. Plaintiff allege that the notice sent purporting to state compliance with paragraph 22 of the Rosman Mortgage failed to contain the required information as described in said paragraph, contained a misleading statement that claimed that the Plaintiff could pay the "total past due

amount before a foreclosure sale take place…to avoid foreclosure", and further failed to state with specificity the conditions Plaintiff are required to meet in order to exercise their right to reinstate the mortgage after acceleration pursuant to paragraph 19 of the Rosman Mortgage.

### COUNT I
### DECLARATORY JUDGMENT

39. Plaintiff repeats and reincorporates by reference all paragraphs above as if fully articulated herein.

40. Plaintiff alleges that the notice sent purporting to state compliance with paragraph 22 of the Mortgages and Mass. Gen. Laws Ch. 244 §35A failed to contain the required information as described in said paragraphs of the mortgage and Mass. Gen. Laws Ch. 244 §35A, contained a misleading statement that claimed that the Plaintiff could pay the "total past due amount before a foreclosure sale take place…to avoid foreclosure", and further failed to state with specificity the conditions Plaintiff was required to meet in order to exercise their right to reinstate the mortgage after acceleration pursuant to paragraph 19 of the Mortgage.

41. As such, the Defendants failed to provide the Plaintiff compliant Notice of Default/ Right to Cure in accordance with Mass. Gen. Laws Ch. 244 §35A in breach of her Mortgage contract and is in violation of G. L. c. 183, § 21 for failure to first comply with the terms of the mortgage prior to exercising the power of sale, rendering any default or right to cure notice with the above described verbiage, as well as any acceleration, any foreclosure notice, any foreclosure auction, and any foreclosure deed made subsequent to said void default/ right to cure notice void.

42. Plaintiff respectfully asks that this Honorable Court declare that any said default letter/ right to cure notice containing misleading statements that claim or imply that the Plaintiff could

pay the "total past due amount before a foreclosure sale take place…to avoid foreclosure" is null and void.

43.     Plaintiff asks that this Honorable Court declare that any such default/ right to cure notice sent to the Plaintiff as described in this complaint be null and void, declare that any notice of mortgagee's foreclosure sale made on said property of the Plaintiff subsequent to such void default notice be null and void, declare that any foreclosure auction conducted subsequent to such void default notice be null and void, declare that any foreclosure deed granted subsequent to such void default notice be null and void, and enjoin the Defendants from conducting any foreclosure auction or conveyance of the subject property.

44.     The Plaintiff is entitled to a declaratory judgment determining that the acceleration of all sums due under the note, the attempted foreclosure, and the attempted mortgagee's foreclosure sale of the subject property is void.

45.     The Plaintiff is entitled to an injunction preventing the transfer of the right, title, and interest in her property.

46.     The Plaintiff is entitled to cancellation costs and fees assessed to her for wrongful foreclosure, together with additional damages.

47.     The Plaintiff is entitled to be returned to her status and circumstances prior to the wrongful foreclosure and sale.

48.     The Plaintiff is entitled to actual, monetary, punitive and exemplary damages, restitution, an accounting, attorneys' fees and costs, equitable relief and all other relief as provided by state law.

## COUNT II
## MORTGAGE POWER OF SALE

49.     Plaintiff repeats and reincorporates by reference all paragraphs above as if fully articulated herein.

50.     Massachusetts permits non-judicial foreclosure under the statutory power of sale contained at G. L. c. 183, § 21, so long as the terms of the mortgage and the statutes related to the power of sale are strictly complied with. The statute states:

> Section 21. The following "power" shall be known as the "Statutory power of Sale", and may be incorporated in any mortgage by reference:
>
> (POWER)
>
> But upon any default in the performance or observance of the foregoing or other condition, the mortgagee or his executors, administrators, successors or assigns may sell the mortgaged premises or such portion thereof as may remain subject to the mortgage in case of any partial release thereof, either as a whole or in parcels, together with all improvements that may be thereon, by public auction on or near the premises then subject to the mortgage, or, if more than one parcel is then subject thereto, on or near one of said parcels, or at such place as may be designated for that purpose in the mortgage, **first complying with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale**, and may convey the same by proper deed or deeds to the purchaser or purchasers absolutely and in fee simple; and such sale shall forever bar the mortgagor and all persons claiming under him from all right and interest in the mortgaged premises, whether at law or in equity.

> (Emphasis added).

51.     As emphasized above, the foreclosure by power of sale requires that a foreclosing bank must "comply [] with the terms of the mortgage…" G.L. c. 183, § 21.

52.     If a bank fails to strictly comply with the power of sale and the terms of the mortgage, then a foreclosure is void. U.S. Bank Nat'l Ass'n v. Schumacher, 467 Mass. 421, 428 (2014) ("Failure to comply strictly with the power of sale renders the foreclosure void.").

53.     The mortgage given by Plaintiff, secured by the subject properties state at 22 as follows:

> 22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument…The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice

is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

54.     Paragraph 22 of the Mortgage requires that prior to acceleration and foreclosure the Defendant is required to send the Borrowers a Default Notice which informs the Borrower that they have a "right to reinstate after acceleration".  The "right to reinstate after acceleration" contained in the Mortgage is described in Paragraph 19 of the Mortgage as follows;

19. Borrower's Right to Reinstate After Acceleration.  If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time *prior to the earliest of: (a) five days before* the sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of judgment enforcing this Security Instrument.  Those *conditions* are that Borrower: (a) *pays Lender all sums which then would be due* under this Security Instrument and the Note *as if no acceleration had occurred*; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to

pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. _Upon reinstatement_ by Borrower, this Security Instrument and _obligations_ secured hereby _shall remain fully effective as if no acceleration had occurred_. However this right to reinstate shall not apply in the case of acceleration under Section 18."

(emphasis added)

55. Plaintiff alleges that the notice sent purporting to state compliance with paragraph 22 of the Mortgage failed to contain the required information as described in said paragraph, contained a misleading statement that claimed that the Plaintiff could pay the "total past due amount before a foreclosure sale take place…to avoid foreclosure", and further failed to state with specificity the conditions Plaintiff was required to meet in order to exercise her right to reinstate the mortgage after acceleration pursuant to paragraph 19 of the Mortgage.

56. As such, there was no compliance with the terms of the mortgage which would have allowed the Defendants to exercise the statutory power of sale as indicated above.

57. No proper Notice of Default was sent to Plaintiff in accordance with the terms of the mortgage.

58. As a result, no acceleration letter could be sent to Plaintiff, nor could the mortgagee exercise the statutory power of sale on said mortgage.

59. Pursuant to the terms of the Mortgage, compliance with the obligations of the Lender as set forth in paragraphs 19 & 22 of the Mortgage are condition precedents to the acceleration and the exercise of the statutory power of sale.

60. Plaintiff thus never received an acceleration notice or Notice of Default pursuant to the terms of the Mortgage.

61.     Due to this failure to comply with the terms of the mortgage, no entity was contractually authorized to exercise the statutory power of sale and foreclose on the Mortgage and sell the subject property at mortgagee's foreclosure sale.  These actions constituted a breach of contract, resulting in damages to the Plaintiff.

62.     As a result of the above noted improper and invalid exercise of the statutory power of sale and purported foreclosure sale, Plaintiff's mortgage loan account was charged fees and costs and expenses for certified mail, advertising costs, legal fees, auctioneer costs and other charges which were reflected in her monthly mortgage statements.

63.     The Plaintiff has incurred damages in hiring an attorney, in regard to the improper actions of Defendants in sending a Notice of Foreclosure Sale and conducting a sale without first complying with the terms of the mortgage in violation of G. L. c. 183, § 21.

64.     Plaintiff has also incurred emotional injuries and damages due to the improper foreclosure of her home without Defendants first complying with the terms of the mortgage.

65.     The Plaintiff has incurred legal fees for the prosecution of this action as a result of Defendants' violation of G. L. c. 183, § 21 due to the breach of contract by Defendants as noted herein.

66.     Plaintiff has suffered harm and is threatened with additional harm from Defendants' breach, including but not limited to loss of her property interest, higher principle balance, improper negative reporting to credit bureaus; inappropriate fees and charges assessed to her, including broker price opinion fees, inspection fees, attorney's fees, "process management" fees, late fees and other charges associated with delinquency and default, and increased accrued interest.

67.     The Defendants' breach of contract and failure to comply with terms of the mortgage as noted herein above, are the direct cause of the harms alleged herein and not Plaintiff' failure to make her mortgage payments.

68.     Therefore, Plaintiff would not have suffered the harms as noted herein were it not for the Defendants' breach of the mortgage contract as noted herein.

69.     The Defendants' failure to comply with the terms of the mortgage is in violation of G. L. c. 183, § 21. The foreclosure is therefore void. U.S. Bank Nat. Ass'n v. Ibanez, 458 Mass. 637, 647 (2011) ("the terms of the power of sale, G.L. c. 183, § 21, must be strictly adhered to"); See also Paiva v. Bank of New York Mellon, USDC Mass. 14-1453, August 11, 2015 (Burroughs, A.) ("Because the Court finds that Countrywide's notice … did not strictly comply with the requirements of paragraph [22] of the mortgage, the foreclosure sale is void.").

70.     The Plaintiff is entitled to a declaratory judgment determining that the acceleration of all sums due under the note, the attempted foreclosure, and the attempted mortgagee's foreclosure sale of the subject property is void.

71.     The Plaintiff is entitled to an injunction preventing the transfer of the right, title, and interest in her property.

72.     The Plaintiff is entitled to cancellation costs and fees assessed to her for wrongful foreclosure, together with additional damages.

73.     The Plaintiff is entitled to be returned to her status and circumstances prior to the wrongful foreclosure and sale.

74.     The Plaintiff is entitled to actual, monetary, punitive and exemplary damages, restitution, an accounting, attorneys' fees and costs, equitable relief and all other relief as provided by state law.

**BREACH OF CONTRACT AND FAILURE TO COMPLY WITH CONDITIONS
PRECEDENT TO EXERCISE THE STATUTORY POWER OF SALE**

75.     Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

76.     As described above, the mortgage contract entered into by Plaintiff constitutes a valid offer.

77.     Upon Plaintiff executing the mortgage contract and giving it to their Lender, the Lender accepted that offer.

78.     Alternatively, Plaintiff's execution of the mortgage contract thereby giving a security interest in her property to her Lender constitutes an offer.  Acceptance of this offer occurred when Defendants accepted payments made by Plaintiff pursuant to the mortgage contract.

79.     The mortgage contract was supported by consideration.  Plaintiff's payments to Defendants constitutes consideration.

80.     Plaintiff and Defendants thereby formed a valid contract and Plaintiff was, is, and remains ready willing and able to perform under said contract.

81.     Defendants breached the mortgage contract of Plaintiff by failing to keep its obligations pursuant to the terms as agreed found at paragraphs 19 & 22 of the Mortgage which state in pertinent part;

> 22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument…The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect

all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time *prior to the earliest of: (a) five days before* the sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of judgment enforcing this Security Instrument. Those *conditions* are that Borrower: (a) *pays Lender all sums which then would be due* under this Security Instrument and the Note *as if no acceleration had occurred*; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. *Upon reinstatement* by Borrower, this Security Instrument and *obligations* secured hereby *shall remain fully effective as if no acceleration had occurred*. However this right to reinstate shall not apply in the case of acceleration under Section 18."

(emphasis added)

82.    In Massachusetts, a contract containing an obligation of the Lender is construed as a condition precedent, which requires strict compliance.

83.     In Massachusetts, a mortgagee agreeing to abide certain obligations pursuant to the mortgage before acceleration, foreclosure, and sale, must adhere to those obligations, with the level of specificity as agreed.

84.      In Massachusetts, the power to sell by foreclosure sale is derived from the mortgage and statute, and strict compliance with the requirements of paragraphs 19 & 22 of the mortgage is an obligation of the mortgagee. Failure send proper Notice of Default pursuant to paragraphs 22 & 19 as noted herein is a breach of mortgage contract renders any acceleration, attempted foreclosure, and sale of the subject property void.

85.     Plaintiff alleges that the notice sent purporting to state compliance with paragraph 22 of the Mortgage failed to contain the required information as described in said paragraph, contained a misleading statement that claimed that the Plaintiff could pay the "total past due amount before a foreclosure sale take place…to avoid foreclosure",  and further failed to state with specificity the conditions Plaintiff is required to meet in order to exercise her right to reinstate the mortgage after acceleration pursuant to paragraph 19 of the Mortgage.

86.     As such, there was no compliance with the terms of the mortgage which would have allowed the Defendants to exercise the statutory power of sale as indicated above.

87.     No default letter was sent to Plaintiff pursuant to the terms of the mortgage. As such the Defendants could not exercise the statutory power of sale on their properties.

88.     Pursuant to the terms of the mortgage proper Notice of Default is a condition precedent to acceleration and the exercise of the statutory power of sale.

89.     Plaintiff thus never received default acceleration notice pursuant to the terms of her mortgages.

90. Due to these failures to comply with the terms of the mortgage, no entity was contractually authorized to exercise the statutory power of sale, foreclose, and sell the subject property at mortgagee's foreclosure sale. These actions constituted a breach of the contract, resulting in damages to the Plaintiff.

91. As a result of the above noted improper and invalid exercises of the statutory power of sale and purported foreclosure sales, Plaintiff' mortgage loan accounts were charged fees and costs and expenses for certified mail, advertising costs, legal fees, auctioneer costs and other charges which were reflected in their monthly mortgage statements.

92. The Plaintiff has incurred damages in hiring an attorney, in regard to the improper actions of Defendants in sending a Notice of Foreclosure Sale and seeking to conduct a sale without first complying with the terms of the mortgage in violation of G. L. c. 183, § 21 and in breach of the contract.

93. Plaintiff has also incurred emotional injuries and damages due to the improper foreclosure of her home without Defendants first complying with the terms of the mortgage and breach of contract.

94. Plaintiff has incurred legal fees for the prosecution of this action as a result of Defendants' violation of G. L. c. 183, § 21 due to the breach of contract by Defendants as noted herein.

95. Plaintiff has suffered harm and is threatened with additional harm from Defendants' breach, including but not limited to loss of property interest, higher principle balance, improper negative reporting to credit bureaus; inappropriate fees and charges assessed to her account, including broker price opinion fees, inspection fees, attorney's fees, "process management" fees, late fees and other charges associated with delinquency and default, and increased accrued interest.

96.     The Defendants' breaches of contracts and failure to comply with terms of the mortgage as noted herein above, are the direct cause of the harms alleged herein and not Plaintiff' failure to make her mortgage payments.

97.     Therefore, Plaintiff would not have suffered foreclosure, sale, or the harms as noted herein were it not for the Defendants' breach of the mortgage contract as noted herein.

98.     The Defendants' failure to comply with the terms of the mortgage is a breach of the mortgage contract and also is in violation of G. L. c. 183, § 21. The foreclosure is therefore void. U.S. Bank Nat. Ass'n v. Ibanez, 458 Mass. 637, 647 (2011) ("the terms of the power of sale, G.L. c. 183, § 21, must be strictly adhered to"); See also Paiva v. Bank of New York Mellon, USDC Mass. 14-1453, August 11, 2015 (Burroughs, A.) ("Because the Court finds that Countrywide's notice … did not strictly comply with the requirements of paragraph [22] of the mortgage, the foreclosure sale is void.").

99.     The Plaintiff is entitled to a declaratory judgment determining that the acceleration of all sums due under the note, the foreclosure, and mortgagee's foreclosure sale of the subject property is in breach of contract and all void.

100.    The Plaintiff is entitled to an injunction preventing the transfer of the right, title, and interest in her property.

101.    The Plaintiff is entitled to cancellation costs and fees assessed to her for wrongful foreclosure, together with additional damages.

102.    The Plaintiff is entitled to be returned to her status and circumstance prior to any wrongful acceleration, foreclosure and sale.

103.    The Plaintiff is entitled to actual, monetary, punitive and exemplary damages, restitution, an accounting, attorneys' fees and costs, equitable relief and all other relief as provided by state law.

### COUNT IV
### VIOLATION OF M.G.L. c. 244 §35A

104.    Plaintiff repeats and reincorporates all paragraphs above as if fully articulated herein.

105.    Pursuant to M.G.L. c. 244 §35A, Defendants Wells Fargo and U.S. Bank were required to notify Plaintiff of "…the nature of the default claimed on such mortgage of such residential real property and of the mortgagor's right to cure the default by <u>paying the sum of money required to cure the default…before</u>…accelerat[ing] the maturity of the unpaid balance of such mortgage obligation or otherwise enforce[ing] the mortgage." (See: M.G.L. Ann. c. 244 §35A.). (Emphasis Added).

106.    Plaintiff further alleges that the default/right to cure letter failed to inform Plaintiff that the right to reinstate after acceleration is to be done "prior to . . . five days before the sale" in violation of M.G.L. ch 244 §35A(c)(2) which requires the Defendants to notify the Plaintiff of "the date by which the mortgagor shall cure the default to avoid . . . *a foreclosure or other action to seize the home*." (emphasis added).

107.    M.G.L. ch 244 §35A(d) also provides that "The Mortgagee, or anyone holding thereunder, may also provide for reinstatement of the note after the 90 day notice to cure has ended."

108.    Defendants failure to notify the Plaintiff of the right to reinstate after acceleration prior to five days before the sale is also a violation of the notice provision provided in M.G.L. ch 244 §35A(d).

109.    Furthermore, "[W]here a homeowner who is facing foreclosure claims that the mortgage holder has failed to provide timely and adequate written notice of the right to cure the default in

payment of the mortgage, in violation of § 35A, the homeowner may file an equitable action . . . seeking to enjoin the foreclosure…[T]he foreclosure may not proceed if the mortgagor proves that the mortgage holder has failed to give the required  notice…[In that case,] the mortgage holder must provide the proper notice required by § 35A and wait to see if the borrower will cure the default within the required time period before recommencing the foreclosure proceeding." (See: U.S. Bank Nat. Ass'n v. Schumacher, 467 Mass. 421, 431 (2014)).

110.    Defendants sent what they purported to be a right to cure notice pursuant to M.G.L. c. 244 §35A.  However, said notice materially misstated that the Plaintiff could pay the "total past due amount before a foreclosure sale take place…to avoid foreclosure" in contradiction to paragraph 19 of the Mortgages.

111.    As such, the Defendants failed to provide the Plaintiff compliant Notice of Default/ Right to Cure in accordance with Mass. Gen. Laws Ch. 244 §35A in breach of her Mortgage contract and is in violation of G. L. c. 183, § 21 for failure to first comply with the terms of the mortgage prior to exercising the power of sale, rendering any default or right to cure notice with the above described verbiage, as well as any acceleration, any foreclosure notice, any foreclosure auction, and any foreclosure deed made subsequent to said void default/ right to cure notices void.

112.    Plaintiff respectfully asks that this Honorable Court declare that any said default letter/ right to cure notice containing a misleading statement that claims or implies that the Plaintiff could pay the "total past due amount before a foreclosure sale take place…to avoid foreclosure" is null and void.

113.    Therefore, said notice is inadequate, ineffective, and fails to comply with M.G.L. c. 244 §35A in such a manner as to render any and all foreclosure actions subsequent to such right to cure notice fundamentally unfair.  As such, the acceleration and attempted foreclosure of the Plaintiff'

Mortgage and the attempted mortgagee's foreclosure sale is invalid, void, and without force and/or effect.

114.    Due to Defendants' failure to comply with M.G.L. c. 244 §35A, no entity was contractually authorized to exercise the statutory power of sale and attempt to foreclose on the Plaintiff's Mortgage and sell her property at mortgagee's foreclosure sale. These actions constituted a breach of contract, resulting in damages to the Plaintiff.

115.    As a result of the above noted improper and invalid exercise of the statutory power of sale and purported foreclosure sale, Plaintiff's mortgage loan account was charged fees and costs and expenses for certified mail, advertising costs, legal fees, auctioneer costs and other charges which were reflected in her monthly mortgage statements.

116.    The Plaintiff has incurred damages in hiring attorneys, in regard to the improper actions of Defendant in failing to send Plaintiff proper and accurate notice of right to cure pursuant to M.G.L. c. 244 §35A, and seeking to conduct a foreclosure and sale without first complying with M.G.L. c. 244 §35A.

117.    Plaintiff has also incurred emotional injuries and damages due to the improper foreclosure and sale of her home without Defendant first complying with M.G.L. c. 244 §35A.

118.    The Plaintiff has incurred legal fees for the prosecution of this action as a result of Defendants' violation of M.G.L. c. 244 §35A as noted herein.

119.    Plaintiff has suffered harm and is threatened with additional harm from Defendants' failure to abide by M.G.L. c. 244 §35A, including but not limited to potential loss of property interest, higher principle balance, improper negative reporting to credit bureaus; inappropriate fees and charges assessed to her, including broker price opinion fees, inspection fees, attorney's fees,

"process management" fees, late fees and other charges associated with delinquency and default, and increased accrued interest.

120. The Defendants' failure to give proper notice of Plaintiff's right to cure as noted herein above, is the direct cause of the harms alleged herein and not Plaintiff's failure to make her mortgage payments.

121. Therefore, Plaintiff would not have suffered the harms as noted herein were it not for the Defendants' failure to abide by statute as noted herein.

122. The Plaintiff is entitled to a declaratory judgment determining that the acceleration of all sums due under the note, the attempted foreclosure, and the attempted mortgagee's foreclosure sale of the subject property is void.

123. The Plaintiff is entitled to an injunction preventing the transfer of the right, title, and interest in her property.

124. The Plaintiff is entitled to cancellation costs and fees assessed to them for wrongful foreclosure, together with additional damages.

125. Plaintiff is entitled to be returned to her status and circumstances prior to the wrongful attempted foreclosure and sale.

126. Plaintiff is entitled to actual, monetary, punitive and exemplary damages, restitution, an accounting, attorneys' fees and costs, equitable relief and all other relief as provided by state law.

<u>**COUNT V**</u>
**BREACH OF CONTRACT - TPP**

127. Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

128. As described above, the TPP contract entered into by Plaintiff constitutes a valid offer.

129. Upon Plaintiffs accepting the TPP contract and making the 1st payment due thereunder as agreed, the Lender accepted that offer.

130. Alternatively, Plaintiffs acceptance of the TPP contract constitutes an offer. Acceptance of that offer occurred when Defendant accepted payments made by Plaintiff pursuant to the TPP contract.

131. The TPP contract was supported by consideration. Plaintiff's payments to Defendants constitutes consideration.

132. Plaintiff and Defendants thereby formed a valid contract and Plaintiff was, is, and remains ready willing and able to perform under said contract.

133. Plaintiff has alleged that on or about January of 2015, Defendants offered and Plaintiff accepted a Trial Period Plan or TPP.

134. Plaintiff has alleged that they tendered the first three (3) payments within the month they were due, and that Defendants accepted the three payments tendered from March through May of 2015.

135. Plaintiffs has alleged that they tendered to Defendants all three (3) payments pursuant to the TPP and that Defendants received all payments due. Therefore, Defendants breached the TPP contract they agreed to with Plaintiff by failing to send a final modification agreement.

136. As a result of the above noted breach of contract, Plaintiff's mortgage loan account was charged fees and costs and expenses for certified mail, advertising costs, legal fees, auctioneer costs and other charges which were reflected in their monthly mortgage statements.

137. The Plaintiff has incurred damages in hiring an attorney, in regard to Defendants' breach of contract.

138. Plaintiff has also incurred emotional injuries and damages due to the breach of the TPP and attempted foreclosure and sale of her home which would not have occurred but for Defendants' breach of contract.

139.    The Plaintiff has incurred legal fees for the prosecution of this action as a result of Defendants' breach of contract.

140.    Plaintiff has suffered harm and are threatened with additional harm from Defendants' breach, including but not limited to potential loss of property interest, higher principle balance, improper negative reporting to credit bureaus; inappropriate fees and charges assessed to her, including broker price opinion fees, inspection fees, attorney's fees, "process management" fees, late fees and other charges associated with delinquency and default, and increased accrued interest.

141.    The Defendants' breach of contract is the direct cause of the harms alleged herein and not Plaintiff's failure to make their mortgage payments.

142.    Therefore, Plaintiff would not have suffered attempted foreclosure, sale, or the harms as noted herein were it not for the Defendant's breach of contract as alleged herein.

143.    The Plaintiff is entitled to a declaratory judgment determining that the Defendants are in breach of contract.

144.    The Plaintiff is entitled to cancellation costs and fees assessed to them for wrongful attempted foreclosure, together with additional damages.

145.    Plaintiff is entitled to actual, monetary, punitive and exemplary damages, restitution, an accounting, attorneys' fees and costs, equitable relief and all other relief as provided by state law.

146.    Plaintiff is entitled to specific performance of the TPP contract and a final modification.

Dated: August 8, 2019                          Respectfully Submitted, Plaintiff,
                                               By her Attorney,
                                               Todd S. Dion, Esq.
                                                _/s/ Todd S. Dion_____
                                               Todd S. Dion, Esq. (659109)
                                               15 Cottage Avenue, Ste 202
                                               Quincy, MA 02169
                                               401-965-4131 Cell
                                               401-270-2202 Fax
                                               toddsdion@msn.com

## <u>VERIFICATION</u>

I, Mary Tobin-Rosman, under the pains and penalties of perjury, state that the above allegations are true and correct to the best of my knowledge.

 _/s/ Mary Tobin-Rosman_____
Mary Tobin-Rosman

**CERTIFICATE OF SERVICE**

I hereby certify that on August 8, 2019, a copy of the foregoing document, filed through the CM/ECF System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies shall be served by first class mail postage prepaid on the parties listed on the NEF as not receiving electronic notice.

/s/ Todd S. Dion
Todd S. Dion
